JAMES J. LOGAN, Respondent, *v.* JOHN C. TURNER, Appellant.

First Department, July 1, 1921.

**Bills and notes — action by accommodation maker to recover from comaker on theory of contract of indemnity — contract of indemnity not shown as matter of law — trial by consent of counterclaim for conversion where no objection to validity is made.**

In an action to recover the amount paid on a promissory note made by the plaintiff and the defendant as joint accommodation makers and predicated on an alleged agreement by the defendant to indemnify the plaintiff against liability thereon, evidence examined, and *held,* that it was error for the court to direct a verdict in favor of the plaintiff on the ground that as a matter of law the defendant had agreed to indemnify the plaintiff.   The question of a contract of indemnity should have been left to the jury.

The counterclaim for conversion of collateral interposed by the defendant, though it did not arise out of the same transaction set forth in the complaint and was not connected with the subject-matter of the action, must on the theory of waiver of the test be deemed to have been litigated by consent, since the plaintiff raised no objection; the verdict of the jury thereon was not against the weight of the evidence.

APPEAL by the defendant, John C. Turner, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 19th day of March, 1919, on the verdict of a jury, and also from an order entered in said clerk's office on the 18th day of March, 1919, denying defendant's motion to set aside the verdict and for a new trial made upon the minutes.

*Nathan D. Stern,* for the appellant.

*Edmund F. Harding* [*Cyril F. dos Passos* with him on the briefs; *dos Passos Brothers,* attorneys], for the respondent.

LAUGHLIN, J.:

Plaintiff's cause of action is for the recovery of the amount paid by him on a promissory note made by him and the defendant as joint makers, and is predicated on an alleged agreement by the defendant to indemnify him against liability thereon. Defendant's counterclaim was for the alleged conversion by the plaintiff of certain bonds claimed to have been owned by the defendant.

It is alleged in the complaint that on the 16th of September, 1915, the Atlantic Beach Corporation, a Florida corporation, made and delivered its promissory note to the Barnett National Bank at Jacksonville, Fla., for $12,500 payable three months after date, and that the plaintiff and defendant signed the note as comakers for the accommodation of the Atlantic Beach Corporation, and the plaintiff received no consideration therefor; that the defendant, at the time the note was so made for a valuable consideration, promised to indemnify and hold plaintiff harmless from and on account of the note or any renewal or renewals thereof, and agreed to pay the note or any renewal thereof at maturity; that on the 7th of September, 1916, the Atlantic Beach Corporation neglected and refused to pay a second renewal of the note, and that the plaintiff was compelled to and did pay the amount of the note with interest to the bank and is now the holder and owner thereof, and that no part of the amount so paid by plaintiff has been repaid to him by the defendant except $5,025, which left the sum of $7,566.62 due and owing to

plaintiff, for which he demanded judgment. The answer admitted that the defendant signed the note for the accommodation of the Atlantic Beach Corporation, and denied the other material allegations of the complaint, and alleged that prior to the making of the note, plaintiff for a valuable consideration agreed to indemnify and hold the defendant harmless from and on account thereof and that plaintiff would pay the note or any renewal thereof at maturity, and denies that the plaintiff signed the note as comaker for the accommodation of the Atlantic Beach Corporation, and alleges that on or about the 23d of July, 1915, plaintiff made an agreement with the Atlantic Beach Corporation by which he agreed to obtain for it new loans amounting to $30,000, and that the note in question was given for one of such loans and that defendant signed it as comaker for the reason that the bank would not make the loan without his signature. It is further alleged that defendant received no part of the money advanced by the bank, and that plaintiff received a large part and applied a portion of it to the payment of debts of the Atlantic Beach Corporation, in which he was interested. It is alleged in the counterclaim that on the 18th of November, 1915, defendant was the owner of fifteen described bonds of $1,000 each and loaned them to the plaintiff for the sole purpose of enabling him to use them as collateral in negotiating a loan for the Atlantic Beach Corporation, and that plaintiff received the bonds and agreed to use them for no other purpose, and that he did not use them for the purpose for which they were loaned, and that on the 18th of January, 1916, and subsequent thereto, defendant demanded of the plaintiff the return of the bonds but plaintiff refused to deliver them to the defendant and has converted them to his own use, to the defendant's damage in the sum of $15,000; that on the 5th of June, 1916, defendant sold said bonds to one Bull, who thereafter repeatedly demanded them of the plaintiff and that plaintiff refused the demand, and on the 27th of September, 1916, Bull resold them to the defendant and assigned to the defendant all his claims against any person on account of the bonds, and that the value of the bonds was $15,000; and judgment for that amount and for the dismissal of the complaint was demanded. Plaintiff replied denying the allegations of the counterclaim.

The evidence shows that the note, the renewal of which plaintiff took up by paying the bank as alleged, was made by the plaintiff and defendant on an exchange of letters between them. The first of these letters was from the plaintiff to the defendant. It was dated September 16, 1915 and, so far as here material, was as follows: " Enclosed I hand you copy of letter from Barnett National Bank, which is self explanatory. I do not know of any good reason why I should sign the note, or why they have asked it but they have asked it, and we will have to have this amount of money either from them or, someone else, and unless you can arrange the $50,000 or $60,000 loan there which you wrote me about, I see nothing to do but to comply with their requirements and get this money. I do not think either of us takes much chance of liability in signing this note with Bonds as collateral, but in case the Company should not pay it, I would expect you to take the bonds and relieve me of the liability." Plaintiff stated in the letter that he thought the reason the bank was so exacting was that the account had been offered to it before and had been refused by it after investigation, and that the bank doubtless knew that the company was not keeping satisfactory balances, and that he inclosed a blank form of the note required by the bank, and further stated as follows: " If you wish to comply with their terms and accept this money, you can fill out the note at 90 days for $12,500, sign it, leaving a place for the signature of the Corporation and my signature, and mail it to me at Tate Springs, Tenn." The letter from the bank which plaintiff inclosed with the note states that the discounting committee of the bank had considered the subject of the conversation between the plaintiff and president of the bank, and that the bank would accept the note of the company signed by the plaintiff and the defendant as comakers for $12,500, due ninety days, with privilege of one renewal, secured by bonds of the company for $25,000. Defendant replied on the 25th of September, 1915, saying: " Under the circumstances, I believe the only thing to do is to sign the note with you and I am sending same herewith to you." By the original note and the renewals the makers became jointly and severally liable. It will be observed that the defendant's reply letter contained no specific reference to the

part of plaintiff's letter in which he stated that in case the company failed to pay the note he would expect the defendant to take it up and relieve him of all liability. On the 30th of December, 1915, plaintiff sent to the defendant the first renewal note and asked him to sign it, which he did, and on the 3d of April, 1916, plaintiff sent the second renewal note to the defendant with a like request, which was complied with. None of these letters contained a reference to any agreement of indemnity. Plaintiff, on paying the second renewal note, received it and the collateral with an assignment thereof from the bank. It appears that he sold the collateral, being the bonds for $25,000, on the 18th of August, 1917, pursuant to the law of Florida, and that they were purchased by said Bull and the plaintiff realized on the sale $5,025, and that he has not been repaid the balance of the note.

Appellant contends that if, by the exchange of the letters, defendant became obligated to indemnify plaintiff, such obligation was confined to the original note. Literally construed, it was so limited and there was no express renewal of the obligation with respect to either of the renewal notes. It would seem, however, that when a renewal of the note was effected, plaintiff could have insisted upon a like agreement for indemnity, if this be one, and if it had not been made, could have stood upon his rights under the original letters. I deem it unnecessary, however, to decide this point, for I think the court erred as matter of law that the minds of the parties met with respect to an agreement of indemnity concerning the original note. Plaintiff merely stated that he would expect the defendant to take the bonds and relieve him from liability in the event that the company should not pay the note, but he did not make that a condition of his becoming a maker of the note; and it is to be observed that, after stating this exception on his part, he stated that if the defendant wished to comply with the terms exacted by the bank, he should fill out, sign and return the note. If he had intended to obligate the defendant to indemnify him, I think he would have there referred to the defendant's becoming so obligated to him, and that the defendant might well infer that the plaintiff entertained the expectation that defendant

would, in the event of default by the company, take the bonds and relieve him of liability by appropriating them to reimburse himself, for at that time plaintiff deemed the security ample, or would relieve him of liability on account of some moral obligation rather than a legal obligation intended to be imposed by merely signing and returning the note. The parties were friends and were both interested in the company and in at least one other enterprise. Plaintiff took up the note and took over the collateral without calling upon defendant so to do. If it may not be so held as matter of law, then I think this was a question for the jury and that the court erred in directing a verdict in favor of the plaintiff.

No objection appears to have been made that the counterclaim for conversion of bonds, which did not arise out of the transaction set forth in the complaint and was not connected with the subject-matter of the action, was not authorized, and it must, therefore, on the theory of waiver of the test, be deemed to have been litigated herein by consent, as if a breach of contract for the return of the bonds only had been alleged. An issue of fact was presented with respect to the alleged conversion of the bonds. There was testimony and evidence tending to show that the bonds were delivered, not to the plaintiff individually, but to a bank of which he was president with instructions that they be delivered to plaintiff or one Mucklow to be used in negotiating a loan or loans to the extent of $25,000 to the Atlantic Beach Corporation, and the bank, by its cashier, receipted therefor. The fifteen bonds to which the counterclaim relates were not used in negotiating a loan for the Atlantic Beach Corporation, and according to the testimony of the plaintiff they did not come into his individual possession and were not used by him in any manner. On the part of the defendant, testimony was given tending to show that the plaintiff admitted having the bonds in his possession and refused a demand for the return thereof, claiming, in effect, that they had been pledged as authorized and that he had purchased them from said Bull. The testimony and evidence presented a fair question of fact on the issue with respect to whether or not the plaintiff converted the bonds, and were it not for what I deem error in the direction of the verdict in favor of the plaintiff on his cause of action,

no ground would be afforded for disturbing the verdict on this issue. I am of opinion, for the reasons already assigned, that the judgment and order should be reversed and a new trial granted, with costs to the appellant to abide the event.

DOWLING, SMITH, MERRELL and GREENBAUM, JJ., concur.

Judgment and order reversed and new trial ordered, with costs to appellant to abide event.